1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    HOTSPOT THERAPEUTICS, INC.,              Case No. 22-cv-04109-TSH

8                    Plaintiff,              **ORDER RE: COUNTERCLAIM**
                                             **DEFENDANTS' MOTIONS TO**
9          v.                                **DISMISS AND RELATED**
                                             **ADMINISTRATIVE MOTIONS TO**
10   NURIX THERAPEUTICS, INC.,                **SEAL**

11                   Defendant.              Re: Dkt. Nos. 24, 25, 28, 29, 36, 37, 38, 39,

12                                           40, 41, 42, 43

13

14                          **I.   INTRODUCTION**

15          Pending before the Court are Plaintiff/Counterclaim Defendant HotSpot Therapeutics,

16   Inc's ("HotSpot") Motion to Dismiss Defendant Nurix Therapeutics, Inc.'s ("Nurix")

17   Counterclaims (ECF No. 25), Counterclaim Defendant Kenneth G. Carson's Motion to Dismiss

18   Nurix's Counterclaims (ECF No. 29), and related Administrative Motions to Seal (ECF Nos. 24,

19   28, 37, 39, 40, and 42). On September 15, 2022, Nurix filed separate Oppositions. ECF Nos. 36,

20   38. On September 29, 2022, HotSpot and Carson filed separate Replies. ECF Nos. 41, 43.

21          The Court previously found these matters suitable for disposition without oral argument

22   pursuant to Civil Local Rule 7-1(b). ECF No. 45. Having considered the parties' positions,

23   relevant legal authority, and the record in this case, the Court **GRANTS IN PART AND DENIES**

24   **IN PART** Plaintiff HotSpot's Motion to Dismiss Nurix's Counterclaims, **GRANTS** Carson's

25   Motion to Dismiss Nurix's Counterclaims, and **GRANTS** the related Administrative Motions to

26   Seal for the following reasons.[1]

27   _____

28   [1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF
     Nos. 11, 15, and 31.

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Factual Background

Nurix is a biotechnology company that uses E3 ligase expertise, internally developed DNA-encoded libraries (DELs), and a "DELigase platform" to virtually target proteins to treat cancer and diseases.  ECF No. 12 (Counterclaims) ¶¶ 10, 12.  DEL technology can be used to accelerate the process of discovering new drugs, and DELs are large collections of small molecules that are screened against targets to identify drug-like molecules.  *Id.* ¶ 15

In September 2015, Nurix and Macroceutics, Inc. ("Macroceutics"), formed by Counterclaim Defendant Carson, entered into a collaborative agreement ("the Agreement") and subsequently exchanged confidential information that involved Nurix's alleged trade secrets.  *Id.* ¶¶ 14-15, 19, 22.  These trade secrets involved chemistry designed, aqueous chemical synthesis, combinatorial chemistry, purification methods, quality control methods, encoding designs, and Nurix's DNATag software.[2]  *Id.* ¶ 22.

In August 2019, HotSpot acquired Macroceutics, and Carson became the Executive Vice President and Head of Chemical Sciences at HotSpot.  *Id.* ¶ 31. The Agreement applies to HotSpot as successor in interest to Macroceutics.  *Id.* ¶ 32.

In May 2020, HotSpot made public statements regarding its ligase drug discovery program.  *Id.* ¶ 36.  In February 2021, HotSpot disclosed in a presentation that HotSpot was using DELs.  *Id.* ¶ 37.  In October 2021, HotSpot made public statements regarding its acquisition of Macroceutics, Macroceutics' DELs or DEL capabilities, and the E3 ubiquitin ligase drug discoveries HotSpot achieved using DELs.  *Id.* ¶ 38.  Nurix alleges HotSpot used Nurix's confidential and proprietary information, without notice to or permission of Nurix, to design or build DELs.  *Id.* ¶ 49.

### B.    Procedural Background

On July 13, 2022, HotSpot filed the instant action, seeking declaratory judgment of 1) no misappropriation under the Defend Trade Secrets Act ("DTSA"); 2) no misappropriation under the

---

[2] Nurix provided Macroceutics the DNATag software in a "PortaTech deconvolution box."  *Id.* at 29.

United States District Court
Northern District of California

California Uniform Trade Secrets Act ("CUTSA"); and 3) no breach of contract.  ECF No. 1 ¶¶ 64-85.  On August 4, 2022, Nurix filed an Answer to Complaint and Counterclaims, alleging claims against HotSpot and Carson.  ECF No. 12.  Nurix alleges the following: 1) Misappropriation of Trade Secrets under the DTSA (against all Counterclaim Defendants); 2) Misappropriation of Trade Secrets under the CUTSA (against all Counterclaim Defendants); 3) Breach of Contract (against HotSpot); 4) violation of the Computer Fraud and Abuse Act ("CFAA") (against all Counterclaim Defendants); 5) Breach of Implied Covenant of Good Faith and Fair Dealing (against HotSpot) ; 6) Intentional Interference with Prospective Economic Relations ("IIPER") (against HotSpot); 7) Intentional Interference with Performance of a Contract ("IIPC") (against HotSpot); and 8) Unjust Enrichment (against HotSpot). *Id*. at ¶¶ 71-139.

On August 25, 2022, HotSpot filed a Motion to Dismiss Defendant Nurix's Counterclaims Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 25) and an Administrative Motion to File Under Seal Portions of HotSpot's Motion to Dismiss (ECF No. 24).  On August 26, 2022, Carson filed a Motion to Dismiss Nurix's Counterclaims (ECF No. 29) and an Administrative Motion to File under Seal Portions of Carson's Motion to Dismiss (ECF No. 28).  On September 15, 2022, Nurix filed Oppositions (ECF Nos. 36, 38) and Administrative Motions to File Under Seal Portions of Nurix's Oppositions (ECF Nos. 37, 39).  On September 29, 2022, HotSpot filed a Reply (ECF No. 41) and an Administrative Motion to File Under Seal Portions of HotSpot's Reply (ECF No. 40). On September 29, 2022, Carson filed a Reply (ECF No. 43) and an Administrative Motion to File Under Seal Portions of Carson's Reply (ECF No. 42).

The Court will address the Motions to Seal and Motions to Dismiss accordingly.

### III.   MOTIONS TO SEAL

Pending before the Court are the following motions to seal:

1.  HotSpot's Motion to Seal Portions of Motion to Dismiss Counterclaims, ECF. No. 24;

2.  Carson's Motion to Seal Portions of Motion to Dismiss Counterclaims, ECF No. 28;

3.  Nurix's Motion to Seal Portions of Opposition to HotSpot's Motion to Dismiss, ECF No. 37;

4.  Nurix's Motion to Seal Portions of Opposition to Carson's Motion to Dismiss, ECF No.

39;

   5.  HotSpot's Motion to Seal Portions of Reply, ECF No. 40; and

   6.  Carson's Motion to Seal Portions of Reply, ECF No. 42.

   "Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).  Consequently, filings that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016).  "Because the parties' sealing motions relate to Defendant's pleading and the briefing on Plaintiffs' motion to dismiss and strike that pleading, the sealing motions are more than tangentially related to the merits of the case.  Thus, the compelling reasons standard applies."  *Pinnacle Ventures LLC v. Bertelsmann Education Services*, Case No. 18-cv-3412-BLF, 2019 WL 13126128, at *1 (N.D. Cal. Dec. 10, 2019).

   Here, all of the parties' motions seek to seal portions of their motions and briefings that describe the contents of the Agreement.  *See* ECF Nos. 24 at 3; 28 at 3; 37 at 1-2; 39 at 1-2; 40 at 3; 42 at 3.  The Court has reviewed the requested portions to be sealed and finds the parties' requests are narrowly tailored to the Agreement.  The Court agrees that there are compelling reasons to seal the requested portions as they relate to the Agreement.  *See Regis Metro Associates, Inc. v. NBR Co.*, LLC, Case No. 20-cv-2309-DMR, 2022 WL 267443, at *14 (N.D. Cal. Jan 28, 2022) (granting motion to seal because "[a]ll of the documents contain sensitive business information or may be subject to confidentiality agreements); *Nicolosi Distributing, Inc. v. Finishmaster, Inc.*, Case No. 18-v-03587-BLF, 2018 WL 10758114, at *2 (N.D. Cal. Aug. 28, 2018) ("[C]ompelling reasons exist [contracts] because they contain proprietary and confidential business information, including potential trade secrets and business practices, such as product rates and purchase requirements.").  The Court has previously sealed the entirety of the Agreement and material identical to the present requests.  ECF Nos. 9; 20. *See Synchronos Technologies, Inc. v. Dropbox Inc.*, Case No. 16-cv-0119-HSG, 2020 WL 759528, at *5 (N.D. Cal. Feb. 14, 2020)

United States District Court
Northern District of California

4

1  ("[T]he sealing requests seek to seal information materially identical to prior sealing requests,

2  which this Court granted.  The Court sees no reason why it should here find that information it

3  previously deemed sealable no longer meets the 'compelling reasons' standard.").

4    The Court **GRANTS** the parties' administrative motions and seals the highlighted portions

5  contained in:

6    1.  HotSpot's Motion to Dismiss Counterclaims: 1:24; 2:12-13; 5:12-6:25; 7:17-23; 11:24-

7  25; 12:2-3; 12:9-15; 13:7; 13:19-14:10; 17:8-16; 19:4; 19:28; 20:6;

8    2.  Carson's Motion to Dismiss Counterclaims:  1:20-22; 2:1-9; 4:3-19; 5:16-28; 11:20-21;

9    3.  Nurix's Opposition to HotSpot's Motion to Dismiss: 1:17-19, 1:21-26, 2:1-5, 2:7, 2:12,

10  2:15-16, 2:19, 2:24, 6:8-9, 7:5-21, 7:25-26, 8:3-13, 8:16-17, 8:20-25, 8:27-9:2, 9:15, 9:19, 9:21-

11  24, 10:1, 10:5-6, 10:8-11, 10:26, 11:16-17, 15:15-18, 15:20-21, 16:20-21, 16:23, 16:25, 17:2-4,

12  17:6-16, 17:18-20, 19:11, 21:2-3;

13    4.  Nurix's Opposition to Carson's Motion to Dismiss: 1:5-6, 1:10-11, 1:14-15, 1:17-21,

14  1:26-28, 2:1, 2:5-8, 2:10, 2:15, 2:18-19, 2:22, 2:27, 3:4, 5:10, 5:14, 5:20, 5:23, 6:22-23, 6:26-7:6,

15  7:10-11, 11:6-7;

16    5.  HotSpot's Reply: 1:3-13; 3:20-28; 4:1-11; 5:8-13; 5:23-28; 6:1-28; 7:1-12; 9:4-5;

17  11:11-15; and

18    6.  Carson's Reply: 3:27; 4:23-26; 5:1-2; and 5:16-17.

19    **IV.  HOTSPOT'S MOTION TO DISMISS NURIX'S COUNTERCLAIMS**

20    HotSpot moves to dismiss all of Nurix's counterclaims pursuant to Federal Rule of Civil

21  Procedure 12(b)(6) for failure to state a claim.  ECF No. 25.

22  **A. Legal Standard**

23    "A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure

24  12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint."

25  *Snap! Mobile, Inc. v. Croghan*, Case No. 18-cv-4686-LHK, 2019 WL 3503376, at *2 (N.D. Cal.

26  Aug. 1, 2019).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the

27  legal sufficiency of a claim." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and

28  quotation marks omitted).  A complaint must plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must therefore provide "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the Court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Therefore, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and quotations omitted).

**B.    Discussion**

**1.    Counterclaims I and II: Trade Secret Misappropriation**

HotSpot argues Nurix's trade secret misappropriation claims fail to sufficiently identify a trade secret.  ECF No. 25 at 9-12.  Nurix argues it has sufficiently identified confidential information involving its "E3 ubiquitin ligases and DELs" and its DNATag software as trade secrets.  ECF No. 36 at 5-9.

A "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique or process," that (a) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its discourse or use" and (b) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d); *see also*

United States District Court
Northern District of California

1   18 U.S.C. § 1839(3) (defining "trade secret" as "financial, business, scientific, technical,

2   economic, or engineering information, including patterns, plans, compilations, program devices,

3   formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes.").

4          "Courts have held that the DTSA and the CUTSA share the same pleading requirements

5   for the identification of trade secrets." *Arthur J. Gallagher & Co v. Tarantino*, 498 F.Supp.3d

6   1155 (N.D. Cal. Nov. 2, 2020).  "[T]o allege a trade secret, the plaintiff must 'describe the subject

7   matter of the trade secret with sufficient particularity to separate it from matters of general

8   knowledge in the trade or of special persons who are skilled in the trade, and to permit the

9   defendant to ascertain at least the boundaries within which the secret lies.'" *Navigation Holdings,*

10  *LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. Mar. 27, 2020) (citing *Vendavo, Inc. v. Price*

11  *f(x) AG*, Case No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)).  A

12  "plaintiff need not spell out the details of the trade secret," but must "describe the subject matter of

13  the trade secret with sufficient particularity to separate it from matters of general knowledge in the

14  trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at

15  least the boundaries within which the secret lies." *Alta Devices, Inc. v. LG Elecs*., Inc., 343 F.

16  Supp. 3d 868, 877 (N.D. Cal. 2018).

17         The Court finds Nurix identifies its trade secrets with sufficient particularity.  Nurix

18  alleges that the confidential information under the Agreement constitute its trade secrets,

19  specifically the "protectable knowledge, methods, techniques, processes, procedures,

20  compilations, formulas, and designs relating to E3 ubiquitin ligases and DELs" and Nurix's

21  "DNATag software."  ECF No. 12 ¶¶ 51, 55, 72, 76.[3]  Therefore, Nurix has alleged the subject

22  matter in question:  E3 ubiquitin ligases, DELs, and Nurix's DNATag software,[4] and the

23

24  _____

    [3] E3 ligases are involved in diseases, including cancer and autoimmune disorders and DELs are

25  "DNA-encoded libraries" used to accelerate the process of discovering new drugs to treat diseases.
    *Id*. ¶¶ 10, 12, 15.  Nurix's DNATag software is custom software, developed by Nurix's contractor

26  under Nurix's supervision that enables decoding and use of confidential information covered by
    the Agreement.  *Id*. ¶ 55.

27  [4] The parties appear to dispute the facts surrounding the development of the DNATag software
    and when the software was sent to Macroceutics.  *See* ECF Nos. 25 at 11-12; 36 at 7-9.  However, in

28  considering a motion to dismiss, the Court accepts factual allegations in the complaint as true and
    construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul*
    *Fire & Marine Ins. C*o., 519 F.3d 1025, 1031 (9th Cir. 2008).  Nurix alleges its DNATag software

United States District Court
Northern District of California

confidential information in the Agreement.  *Compare Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.

Supp. 3d 868, 881 (N.D. Cal. 2018) (finding allegations describing "high throughput thin-film

deposition; epitaxial lift-off of the thin-film; and GaAs substrate maintenance and re-use"

sufficiently particular to identify trade secrets) *and Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d

1024, 1052 (N.D. Cal. 2020) ("[T]he court concludes that plaintiff described the trade secret

information purportedly misappropriated by He with sufficient particularity.  Plaintiff qualifies the

breadth of the categories of information allegedly misappropriated by He with reference to their

subject matter.") *with Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, Case No. 19-cv-5611-

PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020) ("[A]llegations that set out purported trade

secrets in broad, categorical terms that are merely descriptive of the types of information that

generally may qualify as protectable trade secrets' are insufficient to state a claim.").

Although HotSpot argues "DELs have been around since 1992," Nurix's allegations

narrow the DEL technology to those that are covered by the Agreement and Nurix has attached the

Agreement, which defines what is considered "confidential information," to its counterclaims.  *See*

ECF No. 12-1, Exhibit A; *STEMCELL Technologies Canada Inc. v. StemExpress, LLC,* Case No.

21-cv-1594-BC-LB, 2022 WL 585668, at *7 (N.D. Cal. Feb. 24, 2022) ("When parties have a

relationship through a confidentiality agreement . . . they have more information about the alleged

confidential and trade-secret information.").  *Compare with AlterG, Inc. v. Boost Tradmills LLC*,

388 F. Supp. 3d 1133, 1145 (N.D. Cal. May 20, 2019) (finding plaintiff failed to sufficiently

allege trade secrets because "AlterG only summarizes rather broadly the categories of information

protected by the agreements.").

Accordingly, the Court **DENIES** HotSpot's Motion to Dismiss Nurix's first and second

counterclaims for misappropriation of trade secrets.

United States District Court
Northern District of California

---

is a trade secret and that Nurix took reasonable steps to protect its secrecy by providing
Macroceutics the software on a computer device.  The Court finds this sufficient to identify the
DNATag software as a trade secret.

1

        **2.      Counterclaim III: Breach of Contract**

2          HotSpot argues Nurix fails to identify the confidential information that may have been

3   disclosed under the Agreement.  ECF No. 25 at 13-14.

4          To prevail on a claim for breach of contract, a plaintiff must prove "(1) the contract, (2) the

5   plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach,

6   and (4) the resulting damage to the plaintiff."  *See Richman v. Hartley*, 224 Cal. App. 4th 1182,

7   1186 (2014).

8          Here, Nurix alleges the existence of the Agreement and that HotSpot breached the

9   Agreement by using Nurix's confidential information involving DEL Technology outside of the

10  Nurix-Macroceutics collaboration, disclosing it to one or more third parties, and "targeting,

11  developing, and marketing E3 ubiquitin ligase drug discoveries including CBL-B."  ECF No. 12

12  ¶¶ 97-99, 101.  The Court has reviewed the Agreement and, construing the pleadings in the light

13  most favorable to Nurix, finds Nurix's allegations and the Agreement sufficiently identify the

14  "confidential information" under the Agreement.  *See DocMagic, Inc v. Ellie Mai, Inc.,* 745 F.

15  Supp. 2d 1119, 1137 (N.D. Cal. Oct. 12, 2010) (denying motion to dismiss breach of contract

16  claims because "DocMagic is not required to plead with specificity the precise proprietary

17  information that Ellie Mae misappropriated and misused.").  Accordingly, the Court **DENIES**

18  HotSpot's Motion to Dimiss Nurix's breach of contract counterclaim.

19         **3.      Violation of the CFAA**

20         "The CFAA prohibits a number of different computer crimes, the majority of which

21  involve accessing computers without authorization or in excess of authorization, and then taking

22  specified forbidden actions, ranging from obtaining information to damaging a computer or

23  computer data."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir.2009).  "The

24  statute thus provides two ways of committing the crime of improperly accessing a protected

25  computer: (1) obtaining access without authorization; and (2) obtaining access with authorization

26  but then using that access improperly."  *Musacchio v. United States*, 577 U.S. 237, 240 (2016).

27  Moreover, "[t]he [CFAA] permits a private right of action when a party has suffered a loss of at

28

United States District Court
Northern District of California

1   least $5,000 during a one-year period."  *Facebook, Inc. v. Power Ventures, Inc*., 844 F.3d 1058

2   (9th Cir. 2016) (citing 18 U.S.C. § 1030(c)(4)(A)(i)(I)).

3       HotSpot argues Nurix fails to plead a) HotSpot and Carson exceeded the scope of

4   authorized access to its computer systems and b) damage or loss. ECF No. 25 at 14-16.

5                          a.      **Scope of Authorized Access**

6       HotSpot argues Nurix cannot allege Counterclaim Defendants exceeded the scope of

7   authorized access because Macroceutics was given authorization to access the PortaTech

8   deconvolution box.  ECF No. 25 at 15.  Nurix argues it did not authorize Counterclaim Defendants

9   to use the box for purposes outside of the Agreement.  ECF No. 36 at 11-12.

10      The CFAA defines the term "exceeds authorized access" to mean "access to a computer

11  with authorization and to use such access to obtain or alter information in the computer that the

12  accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).  In *Van Buren*, the Supreme

13  Court held that "an individual 'exceeds authorized access' when he accesses a computer with

14  authorization but then obtains information located in particular areas of the computer—such as

15  files, folders, or databases—that are off limits to him."  *Van Buren v. United States*, 141 S. Ct.

16  1648, 1662 (2021).  Therefore, the CFAA "covers those who obtain information from particular

17  areas in the computer . . . to which their computer access does not extend.  It does not cover those

18  who, like *Van Buren*, have improper motives for obtaining information that is otherwise available

19  to them."  *hiQ Labs, Inc. v. LinkedIn Corp*., 31 F.4th 1180, 1198 (9th Cir. 2022); *see generally*

20  *MetaPlatforms, Inc. v. BrandTotal Ltd*., Case No. 20-cv-7182-JCS, 2022 WL 1990225 (N.D. Cal.

21  June 6, 2022) (applying *Van Buren* to civil action); *Monoithic Power Systems, Inc. v. Dong*, Case

22  No. 20-cv-6752-JSW, 2021 WL 4522291 (N.D. Cal. June 22, 2021) (same).

23      The Court finds Nurix fails to plead Counterclaim Defendants exceeded the scope of

24  authorized access.  Nurix alleges Counterclaim Defendants "exceed[ed] the scope of any

25  authorized access" when they "intentionally used the PortaTech deconvolution box and/or

26  DNATag software . . . outside of the Nurix-Macroceutics collaboration" and "develop[ed] E3

27  ubiquitin ligase drug discoveries including CBL-B." ECF No. 12  ¶¶ 107-108.  However, Nurix

28  does not allege that Nurix denied Counterclaim Defendants access to information within the

United States District Court
Northern District of California

PortaTech deconvolution box or DNATag software, and Nurix does not allege how Counterclaim Defendants circumvented any restricted files. *See Van Buren*, 141 S. Ct. at 1662 ("The parties agree that Van Buren accessed the law enforcement database system with authorization. The only question is whether Van Buren could use the system to retrieve license-plate information. Both sides agree that he could. Van Buren accordingly did not "excee[d] authorized access" to the database."); *Dong*, 2021 WL 4522291, at *4 (N.D. Cal. June 22, 2021) (finding failure to plead "exceeds authorized access" because "MPS does not allege it denied her that access. Nor does it allege that . . . Defendants accessed or obtained information they were not authorized to obtain . . . it does not allege she circumvented the program."); *cf. Glam and Glits Nail Design, Inc. v. #NotPolish, Inc.*, Case No. 21-cv-0052-GPC-DEB, 2021 WL 2317410, at *8 (S.D. Cal. June 7, 2021) ("Here, the 'synching' of the Information occurred when Ms. Lai indeed had the authorization to obtain and access the Information as a G&G employee, thus she did not exceed 'authorized access.' Whether Ms. Lai ultimately misappropriated the Information she was authorized access to is a separate question outside CFAA's scope.").

Accordingly, the Court **GRANTS** HotSpot's Motion to Dismiss Nurix's CFAA claim. The Court **GRANTS** Nurix leave to amend. *See Petersen-Dean Inc. v. Folk*, Case No. 15-cv-5522-NC, 2016 WL 3951661, at *6 (N.D. Cal. July 22, 2016).

### b.    Damage or Loss

HotSpot also argues Nurix failed to adequately plead damages or loss under the CFAA. ECF No. 25 at 16. Nurix argues it has suffered loss, including the cost of assessing HotSpot's activity with respect to the PortaTech deconvolution box and expending of employee hours to monitor HotSpot's activity. ECF No. 36 at 13.

The Court agrees with HotSpot. Although Nurix lists its alleged losses in its Opposition, Nurix fails to plead these losses in its counterclaims. *See* ¶ 109 ("Nurix has suffered actual damages, including but not limited to lost profits. Nurix is entitled to recover these damages in an amount to be proven at trial."). The CFAA requires Nurix to "plead facts about its alleged damages under the CFAA." *Metabyte, Inc. v. NVIDIA Corp.*, Case No. 12-cv-0044-SC, 2013 WL 1729808, at *5 (N.D. Cal. Apr. 22, 2013). Nurix's allegations fail to do so. *See DocMagic*, 745 F.

1  Supp. 2d at 1150 (finding allegation that "'Ellie Mae has suffered damages and loss . . . including,

2  without limitation, harm to Ellie Mae's data and/or computer(s) and other losses and damages in

3  an amount to be proven at trial, but in any event, over $5000 aggregated over a one-year period"

4  insufficient to plead loss under CFAA because "the averment verges on the type of conclusory,

5  formulaic recitation of the elements of a cause of action . . . [and] even if the court were to

6  consider the allegation, [it] fails to plead facts sufficient to meet the CFAA's requirement for a

7  private cause of action.")

8        Accordingly, for this additional reason, the Court **GRANTS** HotSpot's Motion to Dismiss

9  Nurix's CFAA counterclaim and **GRANTS** Nurix leave to amend.

10        **4.**        **Counterclaim V: Breach of Implied Covenant of Good Faith and Fair Dealing**

11        HotSpot argues Nurix's breach of implied covenant of good faith and fair dealing claim

12  must be dismissed because the claim is based on the Agreement—a written contract.  ECF No. 25

13  at 16-18.  Nurix argues that it may plead breach of implied covenant of good faith and fair dealing

14  as an alternative to its breach of contract claims.  ECF No. 36 at 14-15.

15        To state a claim of breach of covenant of good faith and fair dealing, a plaintiff "must

16  allege a failure or refusal to discharge contractual responsibilities, prompted not by an honest

17  mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly

18  frustrates the agreed common purposes and disappoints the reasonable expectations of the other

19  party thereby depriving that party of the benefits of the agreement." *Rosenfeld v. JPMorgan Chase*

20  *Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).  "[W]here breach of an actual term is

21  alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Guz v.*

22  *Bechtel Nat'l Inc*., 24 Cal. 4th 317, 327 (2000).  Therefore, "a claim alleging breach of the implied

23  covenant of good faith and fair dealing cannot be based on the same breach as the contract claim,

24  or else it will be dismissed."  *Landucci v. State Farm Insurance Co*., 65 F. Supp. 3d 694, 716

25  (N.D. Cal. 2014) (internal citations and quotations omitted).

26        Here, Nurix alleges HotSpot breached the covenant of good faith and fair dealing by using

27  confidential information and preventing Nurix from receiving benefits under the Agreement, and

28  therefore acting in bad faith.  ECF No. 12 ¶¶ 112-15.  However, these allegations fail to go beyond

Nurix's breach of contract claim. *See* ECF No. 12 ¶¶ 98-99, 101 ("using Nurix's confidential and proprietary information outside of the Nurix-Macroceutics collaboration," disclosing the confidential information, and conducting commercial activity); *see also Carlson v. Clapper*, Case No. 18-cv-7195-VKD, 2019 WL 2211196, at *5 (N.D. Cal. May 22, 2019) (finding claims duplicative because "[p]laintiffs identify no steps defendants took to frustrate the purposes of the Services Agreement that differ in any way from acts plaintiffs say constitute defendants' failure to perform their obligations under that agreement, which plaintiffs claim is a breach of contract."); *Pierry, Inc. v. Thirty-One Gifts, LLC*, Case No. 17-cv-3074-MEJ, 2017 WL 4236934, at *4 (N.D. Cal. Sept. 25, 2017) (finding claims duplicative because "in both the breach of contract and the breach of the implied covenant claims, Pierry alleges Thirty-One Gifts breached the MSA by failing to make payments required under the MSA."); *JH Kelly, LLC v. AECOM Technical Services, Inc*., Case No. 20-cv-5381-HSG, 2022 WL 195648, at *3 (N.D. Cal. Jan. 21, 2022) ("[T]he fundamental problem . . . [is] [t]he SAC does little more than allege that AECOM breached the implied covenant by the same course of conduct that underlies JH Kelly's claim for breach of contract."). Moreover, both of Nurix's claims appear to seek the same relief. *Compare* ECF No. 12 ¶ 103 *with id.* ¶ 116.; *see Daniels v. Alphabet Inc*., Case No. 20-cv-4687-VKD, 2021 WL 1222166, at *9 (N.D. Cal. Mar. 31, 2021).

Accordingly, the Court **GRANTS** HotSpot's Motion to Dimiss Nurix's breach of implied covenant of good faith and fair dealing counterclaim and **GRANTS** Nurix leave to amend. *See Sun Group U.S.A. Harmony City, Inc. v. CRC Corp. Ltd*., Case No. 17-cv-2191-SK, 2018 WL 10689420, at *9 (N.D. Cal. July 9, 2018).

### 5.    Counterclaim VI: IIPER

HotSpot argues Nurix's IIPER counterclaim is preempted by the CUTSA. ECF No. 25 at 18-20. Nurix argues its IIPER claim is not preempted because the claim is distinct from Nurix's misappropriation claims. ECF No. 25 at 15-18.

The "CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." *Waymo LLC v. Uber Technologies, Inc*., 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). The CUTSA includes a

savings clause that "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *Tarantino*, 498 F. Supp. 3d 1155 at 1174.  The nucleus of facts test "focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret misappropriation . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Id.*

Nurix's IIPER claim alleges that HotSpot worked with and acquired Macroceutics with the intent to violate the Agreement.  ECF No. 12 ¶ 120.  However, Nurix's CUTSA claim alleges Counterclaim Defendants "us[ed]" Nurix's trade secrets and DNATag software "outside of the Nurix-Macroceutics collaboration" and therefore "exceeded the scope of any authorization [counterclaim defendants] had to possess or use Nurix's confidential and proprietary information." ECF No. 12 ¶¶ 74-75, 77-78.  These claims follow the same scheme of using confidential information and violating the Agreement.  *Compare Tarantino*, 498 F. Supp. 3d at 1175 (finding preemption by CUTSA where plaintiff alleged "Defendants engaged in wrongful conduct . . . by breaching their written and enforceable contractual obligations . . . misappropriating Gallagher's trade secrets and confidential information . . . and breaching or encouraging the breach of [Mr.] Tarantino's and [Mr.] Machette's fiduciary duties.") *with JEB Group, Inc. v. San Jose III*, Case No. 19-cv-4230-CJC(AGRx)  2020 WL 2790012, at *4 (C.D. Cal.  Mar. 31, 2020) (finding no preemption by CUTSA because "MoTek's interference claims are premised on facts separate and apart from the misappropriation of trade secrets because they allege that the Individual Defendants contacted MoTek's clients in attempts to convince them to end their relationships with MoTek."); *Aavid Termalloy LLC v. Cooler Master Co., Ltd.*, Case No. 17-cv-5363-JSW, 2018 WL 11348438, at *4 (N.D. Cal. June 15, 2018) (finding interference claim not preempted by CUTSA because plaintiff made "independent allegations regarding Aavid's alleged false statements to third parties regarding patent infringement" that "are distinct from the allegations that Aavid misappropriated trade secret information.").  As plead, Nurix's allegation that HotSpot worked with and acquired Macroceutics is "too vague for the Court to conclude that this claim is not premised on the misappropriation of trade secrets" and Nurix has "failed to clearly delineate" its claims.  *See*

14

*Nelson Brothers*, Case No. 17-cv-158-DOC (JCGX), 2017 WL 8220428, at *9 (C.D. Cal. June 27, 2017); *cf. Sunpower Corp. v. SolarCity Corp.*, Case No. 12-cv-0694-LHK, 2012 WL 6160472, at *6 (N.D. Cal. Dec. 11, 2012) ("[T]he majority of district courts . . . [have] held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA.").

Accordingly, the Court **GRANTS** HotSpot's Motion to Dismiss Nurix's IIPER counterclaim. The Court **GRANTS** Nurix leave to amend its IIPER counterclaim. *See Aavid Termalloy LLC*, 2018 WL 11348438, at *4.

### 6. Counterclaim VII: IIPC

HotSpot argues Nurix's IIPC counterclaim is preempted by the CUTSA. ECF No. 25 at 18-20.

As discussed above, the CUTSA includes a savings clause that that "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *Tarantino*, 498 F. Supp. 3d at 1174.

Here, Nurix's IIPC claim alleges HotSpot "worked with Macroceutics with the intent to violate the Agreement with Nurix," "acquired Macroceutics with the intent to violate the Agreement with Nurix," and "intended to disrupt or induce a breach of the contractual relationship . . . under the Agreement." ECF No. 12 ¶¶ 129, 131, 132. For the same reasons as discussed above, the Court finds Nurix's IIPC claims are preempted by the CUTSA. The Court **GRANTS** HotSpot's Motion to Dismiss Nurix's IIPC counterclaim and **GRANTS** Nurix leave to amend.

### 7. Counterclaim VIII: Unjust Enrichment

Finally, HotSpot argues Nurix's unjust enrichment claim is preempted by the CUTSA. ECF No. 25 at 18-20.

Nurix's unjust enrichment counterclaim alleges Nurix "conferred benefits upon HotSpot, including but not limited to access to the PortaTech deconvolution box [and] the DNATag Software," HotSpot "continues to possess Nurix's confidential and proprietary information pertaining to DEL design and construction," and has been unjustly enriched. ECF No. 12 ¶¶ 136-38. The Court finds Nurix's CUTSA and unjust enrichment claims follow the same scheme of

violating the Agreement by using confidential information obtained from the Agreement. *See AirDefense, Inc. v. AirTight Networks, Inc.,* Case No. 05-cv-4615-JF, 2006 WL 2092053, at *6 (N.D. Cal. July 26, 2006) ("AirDefense alleges that AirTight 'received a benefit and unjustly retained and continues to retain that benefit at the expense of and without compensating AirDefense.' . . . Because this claim also arises from the same facts as the claim for misappropriation of trade secrets, it also is preempted.").

The Court **GRANTS** HotSpot's Motion to Dismiss Nurix's unjust enrichment counterclaim and **GRANTS** Nurix leave to amend.

## V.   CARSON'S MOTION TO DISMISS NURIX'S COUNTERCLAIMS

Carson moves to dismiss Nurix's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[5]   ECF No. 29 at 8.

### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction.  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  When the Court "acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' . . . uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.  Personal Jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta*

---

[5] Carson incorporates by reference and joins HotSpot in moving to dismiss Nurix's Counterclaims I, II, and IV for failure to state a claim under Federal Rule of Evidence 12(b)(6).  The Court addresses Carson's and HotSpot's 12(b)(6) arguments above.  In addition, Carson moves to dismiss Nurix's Counterclaim III to the extent Nurix alleges breach of contract against Carson. ECF No. 29 at 15-16.  However, Nurix's Counterclaim does not allege breach of contract against Carson and states the breach of contract is "against HotSpot." ECF No. 12 ¶¶ 93-103.  Nurix confirms that it has not asserted a breach of contract counterclaim against Carson.  ECF No. 38 at 3.  The Court **DENIES** Carson's Motion to Dismiss Counterclaim III.

United States District Court
Northern District of California

1    *Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

2    **B.**     **Discussion**

3         Carson argues the Court lacks general and specific jurisdiction.  ECF No. 29 at 8-15.

4         **1.**     **General Jurisdiction**

5         Nurix does not address Carson's general jurisdiction argument and, therefore, concedes the

6    argument.  ECF No. 38.  *See Ardente, Inc. v. Shanley*, Case No. 07-cv-04479, 2010 WL 546485, at

7    *6 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it

8    through silence."); *Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009)

9    ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition

10   memorandum.").

11        The Court proceeds to consider Carson's specific jurisdiction arguments.

12        **2.**     **Specific Jurisdiction**

13        Carson argues Nurix failed to sufficiently plead Carson purposefully directed his activities

14   toward California.  ECF No. 29 at 11.

15         "There are three requirements for a court to exercise specific jurisdiction over a

16   nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the

17   forum or 'purposefully avail himself of the privileges of conducting activities in the forum'; (2)

18   'the claim must be one which arises out of or relates to the defendant's forum-related activities';

19   and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must

20   be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

21   "To satisfy the purposeful direction test, the defendant must have "(1) committed an intentional

22   act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to

23   be suffered in the forum state." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171-72 (9th Cir.

24   Feb, 25, 2022).

25             **a.**     **Intentional Act**

26        Carson argues Nurix fails to identify any "wrongful, intentional" act.  ECF No. 29 at 10.

27   Nurix argues it has alleged Carson obtained and then disclosed Nurix's confidential and

28   proprietary information.  ECF No.  38 at 5.

United States District Court
Northern District of California

The Court finds Nurix sufficiently pleads an intentional act.  "For purposes of jurisdiction, a defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *AMA Multimedia, LLC v. Walnut*, 970 F.3d 1201, 1209 (9th Cir. 2020) (internal citation omitted).  Here, Nurix alleges Carson "possessed Nurix's confidential and proprietary information pertaining to DEL design . . . and the DNATag software" (ECF No. 12 ¶¶ 33, 105), Carson provided HotSpot, and/or used in the course of his work . . . Nurix's confidential and proprietary information without Nurix's permission (*id*. ¶¶ 47, 57), and used the PortaTech deconvolution box and/or DNATag software . . . to develop E3 ubiquitin ligase drug discoveries including CBL-B." (*Id*. ¶ 108).  The Court finds these allegations are sufficient to plead an "intent to perform an actual, physical act in the real world."  *See Burri Law PA v. Skurla*, 35 F.4th 1207, 1214 (9th Cir. 2022) ("Skurla's alleged actions—communicating defamatory statements and interfering with a contractual relationship—would constitute intentional tortious acts"); *Genentech, Inc. v. JKL Biotech, Inc*., Case No. 18-cv-6582-WHA, 2019 WL 1045911, at *5 (N.D. Cal. Mar. 5, 2019) (finding "Genentech has made a prima facie showing that JHL purposely directed its activities to California" where it alleged JHL "orchestrat[ed] and execut[ed] a scheme to steal trade secrets in California."); *Lindora, LLC v. Isagenix International, LLC*, 198 F. Supp. 3d 1127, 1139 (S.D. Cal. 2016) ("Lindora alleges that Isagenix provided its California Associates with infringing marketing materials, held training workshops and promotional events in California using the Lindora Marks, and operates a website where the infringing marks are used. These are sufficient allegations of intentional acts.").

### b.   Expressly Aimed

Carson argues Nurix has not alleged any facts showing Carson expressly aimed his conduct toward California.  ECF No. 29 at 12.  Nurix argues Carson knew that Nurix was California-based when he entered the Agreement and therefore expressly aimed his conduct toward California.  ECF No. 38 at 6.

"A theory of individualized targeting alleges that a defendant engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Axiom*

18

*Foods*, 874 F.3d at 1069.  The Ninth Circuit has held that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires."  *Id*. at 1070.  In *Walden*, the Supreme Court held that two factors are considered when evaluating the "expressly aimed" prong:

> (1) First, the relationship must arise out of contacts that the defendant himself creates with the forum State. ... Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.
> (2) Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Walden v. Fiore*, 571 U.S. 277, 284 (2014).  The "express aiming" analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."  *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 807).

Here, Nurix's counterclaims against Carson are misappropriation of trade secrets under the DTSA and CTSA, and violation of the CFAA.  ECF No. 12.  However, Nurix simply alleges Carson knew Nurix was California-based and Carson conducted business with Nurix under the Agreement.  ECF No. 12 ¶ 7; 12-1, Exhibit A.  These bare allegations are insufficient under *Walden*.  *See Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.,* Case No. 20-cv-6846-EJD, 2021 WL 3037701, at *9 (N.D. Cal. July 19, 2021) ("ESI makes a bare allegation that Lin entered into a conspiracy with Anchor and its principals to make use of ESI trade secrets and bring the trade secrets to Anchor . . . Such allegations . . . do not confer jurisdiction without 'something more' that shows Lin targeted the forum State itself."); *Citcon USA, LLC v. MaplePay Inc*., Case No. 19-cv-2112-NC, 2021 WL 1238231, at *6 (N.D. Cal. Apr. 2, 2021) ("Citcon erroneously applies an individualized targeting theory, because it argues that the defendants' connection to California is based upon their knowledge of Citcon's connections to California.  Notably, neither the second amended complaint nor Citcon's opposition provide information about the forum in which the alleged misappropriation had the most impact.").

Accordingly, Nurix has failed to establish a prima facie case that there is specific jurisdiction over Carson.[6]  The Court **GRANTS** Carson's Motion to Dismiss with leave to amend.  *See Elite Semiconductor, Inc,* 2021 WL 3037701, at 10.

Because the Court has granted Carson's motion to dismiss, the Court considers Nurix's request to permit jurisdictional discovery.  ECF No. 28 at 12.  Nurix argues jurisdictional discovery is warranted and mentions that discovery could include emails sent from Carson to Nurix.  ECF No. 28 at 1, 12.  However, "ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protections of the forum state."  *Hudnall v. Payne*, No. 13-cv-04728-WHO, 2014 WL 524079, at *3 (N.D. Cal. Feb. 6, 2014) (quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)).  Nurix fails to allege any other "specific facts, transactions, or conduct that would give rise to personal jurisdiction" beyond "purely speculative allegations of attenuated jurisdictional contacts."  *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011).  Accordingly, the Court **DENIES** Nurix's request for jurisdictional discovery.  *See Google Inc., v. Egger,* No. C-08-03172-RMW, 2009 WL 1228485, at *1 (N.D. Cal. Apr. 30, 2009) ("District courts in the Ninth Circuit require a plaintiff to establish a 'colorable basis' for personal jurisdiction before granting jurisdictional discovery . . . [meaning] some evidence' tending to establish personal jurisdiction over the defendant.").

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the parties' Administrative Motions to Seal, **GRANTS IN PART AND DENIES IN PART** Plaintiff HotSpot's Motion to Dismiss Nurix's Counterclaims, and **GRANTS** Carson's Motion to Dismiss Nurix's Counterclaims.  The Court **GRANTS** Nurix leave to amend its Counterclaims but **DENIES** Nurix's request for

---

[6] Carson also argues Nurix's counterclaims do not arise out of Carson's California-related activities and the exercise of jurisdiction over Carson would be unreasonable.  ECF No. 29 at 9-15.  Because the Court finds Nurix has not sufficiently alleged facts demonstrating Carson purposefully directed his conduct toward California, the Court declines to address Carson's remaining arguments.

jurisdictional discovery.  Nurix shall have 21 days from the date of this order to file its amended Counterclaims.

**IT IS SO ORDERED.**

Dated: November 2, 2022

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California