UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOTSPOT THERAPEUTICS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NURIX THERAPEUTICS, INC.,<br><br>　　　　　Defendant. | Case No. 22-cv-04109-TSH<br><br>**ORDER RE: COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS AND RELATED ADMINISTRATIVE MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 56, 57, 59, 60, 61, 62 |

## I.　INTRODUCTION

Pending before the Court are Plaintiff/Counterclaim Defendant HotSpot Therapeutics, Inc.'s ("HotSpot's") Motion to Dismiss Defendant Nurix Therapeutics, Inc.'s ("Nurix's") Counterclaims (ECF No. 57) pursuant to Federal Rule of Civil Procedure 12(b)(6) and related Administrative Motions to Seal (ECF Nos. 57, 60, and 61). On December 21, 2022, Defendant filed an Opposition. ECF No. 59. On December 28, 2022, Plaintiff filed a Reply. ECF No. 62.

ECF No. 63. Having considered the parties' positions and relevant legal authority, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff HotSpot's Motion to Dismiss Nurix's Counterclaims and **GRANTS** the related Administrative Motions to Seal for the following reasons.[1]

## II.　BACKGROUND

**A.　Factual Background**

Nurix is a biotechnology company that uses E3 ligase expertise, internally developed DNA-encoded libraries (DELs), and a "DELigase platform" to target proteins to treat cancer and

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 11, 15, and 31.

diseases. ECF No. 50 (Counterclaims) ¶ 9. DEL technology can be used to accelerate the process of discovering new drugs, and DELs are large collections of small molecules that are screened against targets to identify drug-like molecules. *Id*. ¶ 12.

In September 2015, Nurix and Macroceutics, Inc. ("Macroceutics") entered into a collaborative agreement ("the Agreement") and subsequently exchanged confidential information that involved Nurix's alleged trade secrets. *Id.* ¶¶ 11-16, 19-20. These trade secrets involved chemistry designs, aqueous chemical synthesis, combinatorial chemistry, purification methods, quality control methods, encoding designs, and Nurix's DNATag software.[2] *Id*. ¶ 20.

In 2018, Macroceutics and HotSpot entered into a collaboration. *Id*. ¶ 30. In August 2019, HotSpot acquired Macroceutics and Kenneth G. Carson, the founder and CEO of Macroceutics, became the Executive Vice President and Head of Chemical Sciences at HotSpot. *Id*. ¶ 31. The Agreement applies to HotSpot as successor in interest to Macroceutics. *Id*. ¶ 32.

In May 2020, HotSpot made public statements regarding its E3 ubiquitin ligase drug discovery program. *Id*. ¶ 36. In February 2021, HotSpot disclosed in a presentation that HotSpot was using DELs. *Id*. ¶ 37. In October 2021, HotSpot made public statements regarding its acquisition of Macroceutics, Macroceutics' DELs and/or DEL capabilities, and the E3 ubiquitin ligase drug discoveries HotSpot achieved using DELs. *Id*. ¶ 38. Nurix alleges HotSpot used Nurix's confidential and proprietary information, without notice to or permission of Nurix, to design or build DELs. *Id*. ¶ 50.

**B.    Procedural Background**

On July 13, 2022, HotSpot filed the instant action, seeking declaratory judgment of 1) no misappropriation under the Defend Trade Secrets Act ("DTSA"); 2) no misappropriation under the California Uniform Trade Secrets Act ("CUTSA"); and 3) no breach of contract. ECF No. 1 ¶¶ 64-85.

On August 4, 2022, Nurix filed an Answer to Complaint and Counterclaims, alleging claims against HotSpot and Carson. ECF No. 12. Nurix alleged the following against one or both

---

[2] Nurix provided Macroceutics the DNATag software in a "PortaTech deconvolution box." *Id.* ¶ 28.

parties: 1) Misappropriation of Trade Secrets under the DTSA; 2) Misappropriation of Trade Secrets under the CUTSA; 3) Breach of Contract; 4) violation of the Computer Fraud and Abuse Act ("CFAA"); 5) Breach of Implied Covenant of Good Faith and Fair Dealing; 6) Intentional Interference with Prospective Economic Relations ("IIPER"); 7) Intentional Interference with Performance of a Contract ("IIPC"); and 8) Unjust Enrichment. *Id*. ¶¶ 71-139.

On August 25, 2022, HotSpot filed a Motion to Dismiss Defendant Nurix's Counterclaims Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. On August 26, 2022, Carson filed a Motion to Dismiss Nurix's Counterclaims. ECF No. 29.

On November 2, 2022, the Court issued an Order Regarding Counterclaim-Defendants' Motions to Dismiss. ECF No. 46. The Court dismissed all claims as against Carson pursuant to Federal Rule of Civil Procedure 12(b)(2). *Id.* at 16-20. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court also dismissed the counterclaims against HotSpot alleging violation of the CFAA, breach of implied covenant of good faith and fair dealing, IIPER, IIPC, and unjust enrichment. *Id*. at 9-16. The Court granted Nurix leave to amend its dismissed counterclaims. *Id.* at 13-16.

On November 23, 2022, Nurix filed an Amended Answer to Complaint and Counterclaims ("Amended Answer"), renewing and amending its counterclaims against HotSpot for Breach of Implied Covenant of Good Faith and Fair Dealing (Counterclaim IV), IIPER (Counterclaim V), and IIPC (Counterclaim VI). *Id*. ¶¶ 109-164.

On December 7, 2022, HotSpot filed a Motion to Dismiss Defendant Nurix's Amended Counterclaims Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 57) and an Administrative Motion to Seal Portions of HotSpot's Motion to Dismiss (ECF No. 56). On December 21, 2022, Nurix filed Opposition (ECF No. 59) and an Administrative Motion to Seal Portions of Nurix's Opposition to HotSpot's Motion to Dismiss (ECF No. 60). On December 28, 2022, HotSpot filed a Reply (ECF No. 62) and an Administrative Motion to File Under Seal Portions of Reply (ECF No. 61).

The Court will address the Motions to Seal and Motion to Dismiss accordingly.

3

### III.  MOTIONS TO SEAL

Pending before the Court are the following motions to seal:

    1. HotSpot's Motion to Seal Portions of its Motion to Dismiss Counterclaims, ECF No. 56;

    2. Nurix's Motion to Seal Portions of its Opposition to HotSpot's Motion to Dismiss, ECF No. 60; and

    3. HotSpot's Motion to Seal Portions of its Reply, ECF No. 61.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Consequently, filings that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016). "Because the parties' sealing motions relate to Defendant's pleading and the briefing on Plaintiffs' motion to dismiss and strike that pleading, the sealing motions are more than tangentially related to the merits of the case. Thus, the compelling reasons standard applies." *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs.*, Case No. 18-cv-3412-BLF, 2019 WL 13126128, at *1 (N.D. Cal. Dec. 10, 2019).

    Here, all of the parties' motions seek to seal portions of their motions and briefings that describe the contents of the Agreement. *See* ECF Nos. 56 at 3; 60 at 3-4; 37 at 1-2; 61 at 3. The Court has reviewed the requested portions to be sealed and finds the parties' requests are narrowly tailored to the Agreement. The Court agrees that there are compelling reasons to seal the requested portions as they relate to the Agreement. *See Regis Metro Associates, Inc. v. NBR Co.*, LLC, Case No. 20-cv-2309-DMR, 2022 WL 267443, at *14 (N.D. Cal. Jan 28, 2022) (granting motion to seal because "[a]ll of the documents contain sensitive business information or may be subject to confidentiality agreements); *Nicolosi Distributing, Inc. v. Finishmaster, Inc.*, Case No. 18-v-03587-BLF, 2018 WL 10758114, at *2 (N.D. Cal. Aug. 28, 2018) ("[C]ompelling reasons exist to seal [contracts] because they contain proprietary and confidential business information, including potential trade secrets and business practices, such as product rates and purchase

requirements."). The Court has previously sealed the entirety of the Agreement and material identical to the present requests. ECF Nos. 9, 20, 46, 52. *See Synchronos Techs., Inc. v. Dropbox Inc.*, Case No. 16-cv-0119-HSG, 2020 WL 759528, at *5 (N.D. Cal. Feb. 14, 2020) ("[T]he sealing requests seek to seal information materially identical to prior sealing requests, which this Court granted. The Court sees no reason why it should here find that information it previously deemed sealable no longer meets the 'compelling reasons' standard.").

The Court **GRANTS** the parties' administrative motions and seals the highlighted portions contained in:

1. HotSpot's Motion to Dismiss Counterclaims: 3:10-28; 4:1-14; 8:22-28; 9:1-2; 9:16; 9:21-27; 11:23- 28; 12:1-25;

2. HotSpot's Motion to Dismiss, Exhibit 1, pages: 3; 5-7; 11-16; 18; 20-25; 27;[3]

3. Nurix's Opposition to HotSpot's Motion to Dismiss: 1:23- 25, 1:27-2:4, 2:7-11, 2:13, 2:18, 2:21-22, 2:25, 3:2, 3:4, 5:14-16, 5:26-28, 6:3-5, 8:6, 8:17-18, 8:26, 9:1, 9:3-4, 9:23-24, 9:28, 10:4-12, 10:24-26, 11:4-6, 11:10-11, 11:15, 12:17, 14:14, 14:20; 14:22; and

4. HotSpot's Reply: 1:18-28, 2:6-7, 3:12-16, 4:11, 5:18-28, 6:1-8, 8:1-5.

### IV.  MOTION TO DISMISS COUNTERCLAIMS

**A.  Legal Standard**

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *Snap! Mobile, Inc. v. Croghan*, Case No. 18-cv-4686-LHK, 2019 WL 3503376, at *2 (N.D. Cal. Aug. 1, 2019). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted

---

[3] The Motion to Seal HotSpot's Motion to Dismiss seeks to seal highlighted portions of pages 2, 4-6, 10-15, 17, 19-24, and 26 in HotSpot's Motion to Dismiss Exhibit 1. ECF No. 56 at 3. Upon review, these pages notes appear to be off by one with the highlighted portions of Exhibit 1 as filed with ECF. ECF No. 57-1; ECF No. 56-4.

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the Court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.  Discussion**

    **1.  Counterclaim IV: Breach of Implied Covenant of Good Faith and Fair Dealing**

HotSpot argues that Nurix's counterclaim for breach of implied covenant of good faith and fair dealing must be dismissed because the claim centers around a subject matter governed by express contractual terms and is duplicative of Nurix's breach of contract claim. ECF No. 57 at 15-17. Nurix argues that it may plead its breach of implied covenant of good faith and fair dealing counterclaim in the alternative to its breach of contract claim. ECF No. 59 at 9-11.

Under California law, "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988)

6

1  (quoting *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958)). "The exact nature
2  and scope of this duty is a factual inquiry and is based on the purposes of the Agreement, the
3  express terms of the Agreement, and the reasonable expectations of both parties." *Daly v. United*
4  *Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010).
5  "[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the
6  same breach, is superfluous." *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 327 (2000). "If the
7  allegations do not go beyond the statement of a mere contract breach and, relying on the same
8  alleged acts, simply seek the same damages or other relief already claimed in a companion
9  contract cause of action, they may be disregarded as superfluous as no additional claim is actually
10 stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App.
11 1990). In sum, "a claim alleging breach of the implied covenant of good faith and fair dealing
12 cannot be based on the same breach as the contract claim, or else it will be dismissed." *Landucci*
13 *v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citations and quotations
14 omitted).

15 Conversely, where the implied covenant claim is not based on the same breach as the
16 breach of contract claim, but seeks to impose obligations beyond those contemplated by the
17 parties, it will also fail. The implied covenant "exists merely to prevent one contracting party
18 from unfairly frustrating the other party's right to receive the *benefits of the agreement actually*
19 *made*. . . . It cannot impose substantive duties or limits on the contracting parties beyond those
20 incorporated in the specific terms of their agreement." *Guz*, 24 Cal.4th at 350 (citation omitted).
21 "Thus, to the extent a plaintiff seek [sic] to impose limits 'beyond those to which the parties
22 actually agreed, the [implied covenant of good faith and fair dealing] claim is invalid. To the
23 extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is
24 superfluous.'" *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-CV-02191-SK,
25 2018 WL 10689420, at *9 (N.D. Cal. July 9, 2018) (quoting *Guz*, 24 Cal.4th at 377.)

26 While Nurix's Amended Answer provides more facts laying out the basis for its implied
27 covenant of good faith and fair dealing claim, the allegations still amount to the same breach as the
28 contract claim, namely, that HotSpot used Nurix's confidential and proprietary information

7

improperly. *Compare* ECF No. 50 ¶ 103 (claiming breach of contract against HotSpot "at least by using Nurix's confidential and proprietary information outside of the Nurix-Macroceutics collaboration . . . ."), *with id.* ¶ 114 (claiming breach of implied covenant against HotSpot "at least by using the DNATag software. . . ."), *and id.* ¶ 115 (claiming breach of implied covenant against HotSpot "at least by using the DNATag software . . . ."). *See Carlson v. Clapper*, No. 18-CV-07195-VKD, 2019 WL 2211196, at *5 (N.D. Cal. May 22, 2019) ("[p]laintiffs identify no steps defendants took to frustrate the purposes of the Services Agreement that differ in any way from acts plaintiffs say constitute defendants' failure to perform their obligations under that agreement, which plaintiffs claim is a breach of contract.").

Further, to the extent that Nurix seeks to plead its implied covenant claim in the alternative, the claim cannot survive because it seeks to impose liability for obligations beyond those contemplated by the contract. Nurix's own pleadings in support of its implied covenant of good faith and fair dealing claim allege that HotSpot's responsibilities toward the DNATag software were not contemplated by the Agreement. *See* ECF No. 50 ¶ 113 (pleading that where Nurix provided the DNATag software, "[t]he implied covenant of good faith and fair dealing holds Macroceutics/HotSpot to the same restrictions that had been contemplated for Nurix."). This theory of liability requires the Court to expand the contract terms, and thus fails in its own regard. *See In re Google RTB Consumer Priv. Litig.*, No. 21-CV-2155-YGR, 2022 WL 2165489, at *6–7 (N.D. Cal. June 13, 2022) ("plaintiffs' reliance on extracontractual promises and duties not found in the contracts does not save their [implied covenant] claims.").

There is an exception to the rule requiring dismissal of a breach of the implied covenant of good faith and fair dealing that fails to go beyond the same acts as contract breach "where a plaintiff alleges that the defendant acted in bad faith to frustrate the contract's actual benefits." *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 884 (N.D. Cal. 2011). *See also JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, No. 20-CV-05381-HSG, 2022 WL 195648, at *3 (N.D. Cal. Jan. 21, 2022) ("several federal district courts have read *Guz* to allow simultaneous breach of contract and implied covenant claims when the plaintiff alleges that the defendant exercised a right under the contract in bad faith to frustrate the contract's benefits."). Nurix's amended

counterclaim for breach of the implied covenant of good faith and fair dealing makes multiple references to "bad faith." ECF No. 50 ¶¶ 114, 115, 118, 120. However, as pled, these appear to be allegations that HotSpot breached the contract, and not more. Should Nurix have factual allegations making out that HotSpot acted in bad faith to frustrate the contract's actual benefits, such a claim would be permissible.

Accordingly, the Court **GRANTS** HotSpot's Motion to Dimiss Nurix's breach of implied covenant of good faith and fair dealing counterclaim and **GRANTS** Nurix leave to amend.

### 2. Counterclaims V: Intentional Interference with Prospective Economic Relations

Hotspot argues that Nurix's intentional interference with prospective economic relations claim is superseded by the CUTSA. ECF No. 57 at 17-19. Nurix argues that its IIPER claim stands independently of trade secret misappropriation. ECF No. 59 at 11-16.

"CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." *Waymo LLC v. Uber Techs., Inc*., 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). "'[I]f the basis of the alleged property right is in essence that the information is "not . . . generally known to the public," . . . then the claim is sufficiently close to a trade secret claim' to trigger the 'preclusive effect of CUTSA.'" *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 81 (N.D. Cal. 2020) (quoting *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012). Instead of analyzing whether underlying information ultimately constitutes a trade secret, CUTSA "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *Arthur J. Gallagher & Co v. Tarantino*, 498 F. Supp. 3d 1155, 1174 (N.D. Cal. 2020). The nucleus of facts test "focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret misappropriation . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Id*. "At the pleadings stage, the supersession analysis considers whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support

other causes of action." *Waymo*, 256 F. Supp. 3d at 1062.

Multiple facts pled by Nurix in its IIPER claim support trade secret misappropriation, specifically facts related to the DNATag software Nurix alleges in its CUTSA claim to be a trade secret. *Compare* ECF No. 50 ¶ 82 (alleging trade secret misappropriation in that "[a]t least by using the DNATag software outside of the Nurix-Macroceutics collaboration, HotSpot exceeded the scope of any authorization granted to Macroceutics to use Nurix's confidential and proprietary information."), *with id.* ¶ 130 (alleging IIPER where "Hotspot worked with Macroceutics to use the DNATag software . . . ."), *and id.* ¶ 132 (alleging IIPER where "Hotspot worked with Macroceutics to screen . . . using Nurix's DNATag software."). These factual allegations are based on misuse of trade secrets, which forecloses them as a basis for Nurix's IIPER claim regardless of whether the Court later finds the information not to be a trade secret. *See Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *15 (N.D. Cal. Jan. 31, 2020) ("CUTSA displaces claims alleging misappropriation of even confidential information that does not qualify for trade-secret protection."). Thus, an IIPER claim based on these factual allegations would be superseded.

However, not all the facts Nurix pleads in support of its IIPER claim are facts supporting trade secret misappropriation. Nurix also pleads facts related to the breach of the Agreement and Nurix-Macroceutics collaboration independent of Nurix's trade secrets or confidential information. *See* ECF No. 50 ¶¶ 131, 136. *See Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013), *as modified* (Oct. 29, 2013), *as modified on denial of reh'g* (Nov. 7, 2013) (holding that the plaintiff's tort claims, including interference with business relations, were not superseded by CUTSA where the plaintiff alleged wrongful conduct in violating the noncompetition agreement and his duty of loyalty "[b]ecause [plaintiff's] theory of liability on these claims was independent of any trade secret claim."); *Tarantino*, 498 F. Supp. 3d at 1175 (finding plaintiff's tort claims were predicated in part on facts supporting trade secret misappropriation, but also finding the tort claims could proceed to the extent that the plaintiff "alleged misconduct on the part of [defendants] independent of any trade secrets.").

Stripping the facts supporting trade secret misappropriation, the Court must analyze

1 whether the remaining facts plausibly plead an IIPER claim. *Waymo*, 256 F. Supp. 3d at 1062.

2 IIPER requires the following elements:

> (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action.

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). In relation to the third prong, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995) (quotation and footnote omitted). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) (finding independent wrongfulness where defendant allegedly engaged in bribery and offered sexual favors). *Cf. Eco Elec. Sys., LLC v. Reliaguard, Inc.*, No. C 20-00444 WHA, 2022 WL 1157481, at *9 (N.D. Cal. Apr. 19, 2022) ("wining and dining" of third party was improper, but not unlawful as required for IIPER).

The Court finds that the remaining facts outside of trade secret misappropriation cannot plausibly state a claim for IIPER. Particularly, without allegations supporting trade secret misappropriation there are no facts pointing to an independently wrongful act to satisfy IIPER's third prong. *See Rovince Int'l Corp. v. Preston*, No. CV 13-3527 CAS PJWX, 2013 WL 5539430, at *5 (C.D. Cal. Oct. 7, 2013) (finding IIPER claim superseded by the CUTSA where "[t]he only 'wrongful conduct' proffered by the FAC is Preston's alleged misappropriation of Rovince's trade secrets."). *Cf. Aavid Thermalloy LLC v. Cooler Master Co.*, No. 17-CV-05363-JSW, 2018 WL 11348438, at *3 (N.D. Cal. June 15, 2018) (finding IIPER survived CUTSA supersession where the alleged wrongful act was making false statements to third parties regarding patent infringement, but noting that to the extent the plaintiff alleged wrongful acts supporting misappropriation of confidential information, this basis was superseded); *First Advantage*

11

*Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (determining the plaintiff could not satisfy the wrongful act requirement of IIPER with allegations related to trade secrets, but could satisfy with allegations of trade libel).

To the extent there are facts supporting an independently wrongful act by HotSpot beyond trade secret misappropriation, the Amended Answer does not make that clear.

Accordingly, the Court **GRANTS** HotSpot's Motion to Dismiss Nurix's IIPER counterclaim. The Court **GRANTS** Nurix leave to amend its IIPER counterclaim.

### 3. Counterclaim VI: Intentional Interference with Performance of a Contract

#### a. The CUTSA Supersession

Hotspot argues that Nurix's intentional interference with performance of a contract claim is superseded by the CUTSA. ECF No. 57 at 17-19. Nurix argues that its claim stands independently of trade secret misappropriation. ECF No. 59 at 11-16.

The facts alleged by Nurix in support of its IIPC claim are nearly identical to those supporting its IIPER claim. *Compare* ECF No. 50 ¶¶ 130-132 (pleading IIPER), *with id.* ¶¶ 151-153 (pleading IIPC); *id.* ¶¶ 135-137 (pleading IIPER), *with id.* ¶¶ 156-158 (pleading IIPC). Thus, to the extent Nurix's IIPC claim is premised on HotSpot interfering with the Agreement by misappropriating confidential information and trade secrets, these allegations cannot form the basis of its IIPC claim in the same way such facts cannot not form the basis of its IIPER claim. *See Tarantino*, 498 F.Supp.3d at 1174 ("nucleus of fact" test). While allegations related to trade secret misappropriation may support a breach of contract claim, they cannot form the basis of a tortious interference with contract claim. *See Angelica Textile*, 220 Cal. App. 4th at 505 "[CUTSA] expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation. At the same time, [CUTSA] implicitly preempts alternative civil remedies based on trade secret misappropriation.") (quotations and citations omitted).

Just as with its IIPER claim, however, Nurix's facts in support of the IIPC claim are not solely based on trade secret misappropriation, but also allege breach of the Agreement independent of Nurix's trade secrets or confidential information. *See* ECF No. 50 ¶¶ 152, 157. Where these allegations make out an IIPC claim, the claim is not superseded by the CUTSA. *See*

1  *Tarantino*, 498 F. Supp. 3d at 1175.

2  IIPC requires a plaintiff plead and prove the following elements: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (quoting *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004)). Notably, as opposed to an IIPER claim, "it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998), *as modified* (Sept. 23, 1998).

Without the requirement of pleading independently wrongful action, removing the facts related to trade secret misappropriation from Nurix's IIPC claim does not appear to be fatal to it. Nurix alleges contract interference independent of trade secret misappropriation, and thus on its face the Court cannot find that the CUTSA supersedes Nurix's IIPC claim.

### b. Failure to Plead Sufficient Facts Supporting IIPC

HotSpot alternatively moves to dismiss Nurix's IIPC claim based on failure to plead facts stating a claim for IIPC, particularly that Nurix has not sufficiently pled third-party interference where HotSpot is a successor to the contract. ECF No. 57 at 20-21. Nurix argues it has sufficiently pled all elements of its IIPC claim, and that its theory of liability permissibly alleges HotSpot interfered in the contract prior to acquiring Macroceutics. ECF No. 59 at 18.

"California recognizes a cause of action against *noncontracting parties* who interfere with the performance of a contract. 'It has long been held that *a stranger to a contract* may be liable in tort for intentionally interfering with the performance of the contract.'" *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 513-14 (1994) (quoting *Pac. Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)). "Consequently, a contracting party is incapable of interfering with the performance of his or her own contract and cannot be held liable in tort for conspiracy to interfere with his or her own contract." *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007) (citing *Applied Equip. Corp.*, 7 Cal. 4th at 503).

13

Recent California caselaw indicates that an owner of a company is not *per se* barred from liability for interference with that company's contract. *See Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 967 (2013), *modified on denial of reh'g* (Jan. 16, 2014) (analyzing a circumstance where a parent company acquired a subsidiary and concluding the owner parent company could be liable under IIPC, but also noting that the parent company had not assumed liability for the contract); *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 353 (2005) (noting it highly unlikely *Applied Equip. Corp.*, 7 Cal. 4th 503 intended to hold that "persons or entities with an ownership interest in a corporation are automatically immune from liability for interfering with their corporation's contractual obligation."). *But see Martinez v. Donna Indep. Sch. Dist.*, No. CV M-03-377, 2005 WL 8161862, at *2 (S.D. Tex. Mar. 31, 2005) (applying Texas law and dismissing a tortious interference with a contract claim against a school board where prior board members entered into a contract and then reorganized members repudiated the contract); *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 997 (Cal. Ct. App. 1977) (finding a successor-in-interest was not liable for interference with contract relations as a party to the contract). Although pertinent, both *Martinez* and *Dryden* are potentially distinguishable from Nurix's allegations based on the timing of the disruptions with the underlying contract. In *Martinez*, the contract breach appears to have taken place after the new school board took over and was decidedly a party. 2005 WL 8161862, at *2. *Dryden* is the most analogous, but the plaintiff there appears not to have plausibly alleged that the successor interfered with the contract except by the fact of its acquisition of the company. 65 Cal. App. 3d at 996-98.

Examining the relevant caselaw and the facts as pled in this case, interpreted in the light most favorable to Nurix, the facts plausibly provide that in 2018, prior to HotSpot's August 2019 acquisition of Macroceutics, Hotspot knowingly interfered in the Agreement through its work with Macroceutics beyond use of alleged trade secrets. *See* ECF No. 50 ¶¶ 30, 35-46, 148-150, 152. Such work can plausibly be inferred to have occurred prior to acquisition based on the timeline of HotSpot's public announcement regarding CBL-B discoveries which Nurix states was a brief timeframe compared to industry standards. *See* ECF No. 50 ¶¶ 30, 35-46. This timeline also makes it plausible that "interference or disruption" of the Agreement occurred prior to HotSpot

14

becoming successor and therefore a party to the contract. The caselaw in California does not necessarily appear to foreclose this theory of liability, where the tortious elements occur prior to acquisition.

HotSpot raises in its Reply that Nurix's IIPC claim "impermissibly seeks damages for the same economic loss under both contract and tort law." ECF No. 62 at 10-12. "It is inappropriate to consider arguments raised for the first time in a reply brief." *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006). *See also United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("arguments not raised by a party in its opening brief are deemed waived.") (quoting *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999)). Therefore, this Court does not address HotSpot's economic loss argument here.

Accordingly, the Court **DENIES** HotSpot's Motion to Dismiss Nurix's IIPC counterclaim.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the parties' Administrative Motions to Seal, **GRANTS IN PART AND DENIES IN PART** Plaintiff HotSpot's Motion to Dismiss Nurix's Counterclaims. The Court **GRANTS** Nurix leave to amend its Counterclaims. Nurix shall have 21 days from the date of this order to file its amended Counterclaims.

**IS SO ORDERED.**

Dated: February 3, 2023

THOMAS S. HIXSON
United States Magistrate Judge

15