UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOTSPOT THERAPEUTICS, INC.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NURIX THERAPEUTICS, INC.,<br><br>　　　　　　Defendant. | Case No. 22-cv-04109-TSH<br><br>**ORDER RE: PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION TO STAY DISCOVERY (PUBLIC REDACTED VERSION OF ECF NO. 101)**<br><br>Re: Dkt. Nos. 72, 73, 80, 88, 89, 90, 96 |

## I.　INTRODUCTION

　　Pending before the Court are Plaintiff/Counterclaim Defendant HotSpot Therapeutics, Inc.'s ("HotSpot's") Motion to stay discovery until Nurix Therapeutics, Inc. ("Nurix") satisfies the pre-discovery requirement to identify the trade secrets it alleges to be misappropriated by HotSpot (ECF No. 73) and related Administrative Motions to Seal (ECF Nos. 72, 80, 90). On March 16, 2023, Nurix filed Opposition. ECF No. 81. On March 23, 2023, HotSpot filed a Reply. ECF No. 91. Additionally pending is a Motion to strike portions of Nurix's Opposition (ECF No. 89) and related Administrative Motions to Seal (ECF Nos. 88, 96). On April 6, 2023, Nurix filed Opposition to the Motion to strike (ECF No. 97) and on April 13, 2023, HotSpot filed a Reply (ECF No. 100).

　　Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order **GRANTING IN PART AND DENYING IN PART** the parties' administrative motions to seal, **DENYING** HotSpot's Motion to Strike, and **GRANTING IN PART AND DENYING IN PART** HotSpot's Motion to Stay Discovery.

## II.　BACKGROUND

　　Nurix is a biotechnology company that uses E3 ligase expertise, internally developed

DNA-encoded libraries (DELs), and a "DELigase platform" to target proteins to treat cancer and diseases. ECF No. 50 (Counterclaims) ¶ 9. DEL technology can be used to accelerate the process of discovering new drugs, and DELs are large collections of small molecules that are screened against targets to identify drug-like molecules. *Id*. ¶ 12.

In September 2015, Nurix and Macroceutics, Inc. ("Macroceutics") entered into a collaborative agreement ("the Agreement"). ECF No. 73 at 9; ECF No. 81 at 6. Nurix alleges that during the collaboration Nurix shared its confidential and trade secret information with Macroceutics. ECF No. 81 at 6. According to Nurix's counterclaims, these trade secrets involved chemistry designs, aqueous chemical synthesis, combinatorial chemistry, purification methods, quality control methods, encoding designs, and Nurix's DNATag software. ECF No. 50 ¶ 20.

In August 2019, HotSpot acquired Macroceutics. *Id.* ¶ 31. The Agreement applies to HotSpot as successor in interest to Macroceutics. *Id.* ¶ 32. Nurix alleges HotSpot used Nurix's confidential and proprietary information, without notice to or permission of Nurix, to design or build DELs. *Id.* ¶ 50.

On July 13, 2022, HotSpot filed the instant action, seeking declaratory judgment of 1) no misappropriation under the Defend Trade Secrets Act ("DTSA"); 2) no misappropriation under the California Uniform Trade Secrets Act ("CUTSA"); and 3) no breach of contract. *Id.* ¶¶ 64-85. On November 23, 2022, Nurix filed an Amended Answer to Complaint and Counterclaims ("First Amended Answer"). ECF No. 50. On December 7, 2022 HotSpot filed a Motion to Dismiss Nurix's Amended Counterclaims, and on February 3, 2023, the Court issued an Order granting in part and denying in part dismissal. ECF Nos. 57, 65. As a result of the February 3, 2023 Order, Nurix's remaining Counterclaims are as follows: 1) Misappropriation of Trade Secrets under the DTSA; 2) Misappropriation of Trade Secrets under the CUTSA; 3) Breach of Contract; and 4) Intentional Interference with Performance of a Contract ("IIPC"). ECF Nos. 50, 65.

On December 30, 2022, Nurix served its "Identification of Asserted Trade Secrets Pursuant to Cal. Code Civ. Proc. § 2019.210" ("§ 2019.210 Disclosure"). ECF No. 81 at 8; ECF No. 73 at 11, 73-5, Exhibit B. On March 2, 2023, HotSpot filed the instant Motion to Stay Discovery Pending a Complete § 2019.210 Disclosure (ECF No. 73), as well as an Administrative

2

1  Motion to Seal Portions of HotSpot's Motion to Stay Discovery (ECF No. 72). On March 16,
2  2023, Nurix filed an Opposition to HotSpot's Motion to Stay Discovery (ECF No. 81), as well as
3  an Administrative Motion to Seal Portions of Nurix's Opposition (ECF No. 80). On March 23,
4  2023, HotSpot filed a Reply (ECF No. 91), as well as an Administrative Motion to Seal Portions
5  of HotSpot's Reply (ECF No. 90). On March 27, 2023, Nurix filed Support for the Administrative
6  Motion to Seal Portions of HotSpot's Reply. ECF No. 92.

On March 23, 2023, HotSpot filed a Motion to Strike Portions of Nurix's Opposition (ECF No. 89), as well as an Administrative Motion to Seal Portions of HotSpot's Motion to Strike (ECF No. 88). On April 6, 2023, Nurix filed an Opposition to HotSpot's Motion to Strike (ECF No. 97), as well as an Administrative Motion to Seal Nurix's Opposition (ECF No. 96). On April 13, 2023, HotSpot filed a Reply. ECF No. 100.

### III.   MOTIONS TO SEAL

Pending before the Court are the following motions to seal:

1. HotSpot's Motion to Seal Portions of its Motion to Stay Discovery Pending a Complete § 2019.210 Disclosure, ECF No. 72;

2. Nurix's Motion to Seal Portions of its Opposition to HotSpot's Motion to Stay Discovery, ECF No. 80;

3. HotSpot's Motion to Seal Portions of its Reply, ECF No. 90;

4. HotSpot's Motion to Seal Portions of its Motion to Strike Portions of Nurix's Opposition, ECF No. 88; and

5. Nurix's Motion to Seal Portions of its Opposition to HotSpot's Motion to Strike, ECF No. 96.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Consequently, filings that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016). "A 'good cause'

3

1  showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions."
2  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). *See Prolifiq*
3  *Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644 SI, 2014 WL 2527148, at *3 (N.D. Cal. June 4,
4  2014) (applying "good cause" standard to joint discovery letter related to § 2019.210 disclosure).

5  Here, the parties seek to seal portions of their motions and briefings that describe the
6  contents of the Agreement, mediation between the parties, and Nurix's alleged trade secrets. The
7  Court agrees that there is good cause to seal the requested portions relating to the Agreement,
8  confidential mediation communications, and alleged trade secrets. *See Regis Metro Associates,*
9  *Inc. v. NBR Co.*, LLC, Case No. 20-cv-2309-DMR, 2022 WL 267443, at *14 (N.D. Cal. Jan 28,
10 2022) (granting motion to seal because "[a]ll of the documents contain sensitive business
11 information or may be subject to confidentiality agreements"); *Nicolosi Distributing, Inc. v.*
12 *Finishmaster, Inc.*, Case No. 18-v-03587-BLF, 2018 WL 10758114, at *2 (N.D. Cal. Aug. 28,
13 2018) (applying compelling reason standard and determining "compelling reasons exist to seal
14 [contracts] because they contain proprietary and confidential business information, including
15 potential trade secrets and business practices, such as product rates and purchase requirements.");
16 *Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK, 2021 WL 1951250, at *2 (N.D. Cal. May
17 14, 2021) (applying compelling reasons standard and noting "courts have found compelling
18 reasons to seal information regarding a company's proprietary technology when the disclosure of
19 that information would result in competitive harm."). The Court has previously sealed the entirety
20 of the Agreement. ECF Nos. 9, 20, 46, 52, 65. *See Synchronos Techs., Inc. v. Dropbox Inc.*, Case
21 No. 16-cv-0119-HSG, 2020 WL 759528, at *5 (N.D. Cal. Feb. 14, 2020) ("[T]he sealing requests
22 seek to seal information materially identical to prior sealing requests, which this Court granted.
23 The Court sees no reason why it should here find that information it previously deemed sealable
24 no longer meets the 'compelling reasons' standard."). Under the lesser good cause standard, the
25 information sought sealed is largely appropriately identified.

26 The Court does not agree, however, that there is good cause to seal all of the information
27 HotSpot demarcated as part of its Motion to Strike. As discussed below, the Court does not find
28 that Nurix's Opposition to HotSpot's Motion to Stay improperly refers to confidential mediation

communications. As such, the Court does not find good cause to seal the portions of HotSpot's Motion to Strike and Declaration of Robert Frederickson III in support of the Motion to Strike that quote Nurix's statements in Opposition. *See* ECF Nos. 89, 89-1.

In sum, under the lesser good cause standard, the information sought is proper to seal where it describes the contents of the Agreement, which the Court has already sealed, information pertaining to confidential mediation communications, as well as Nurix's description of its purported trade secrets, which contains proprietary and confidential information. The Court has reviewed the requested portions to be sealed and finds the parties' requests are narrowly tailored to this information, except for HotSpot's Motion to Strike and corresponding Declaration of Robert Frederickson III, to the extent they seek to seal portions of Nurix's Opposition to HotSpot's Motion to Stay.

Accordingly, the Court **GRANTS** HotSpot's Motion to Seal Portions of its Motion to Stay Discovery Pending a Complete § 2019.210 Disclosure (ECF No. 72), Nurix's Motion to Seal Portions of its Opposition to HotSpot's Motion to Stay Discovery (ECF No. 80), HotSpot's Motion to Seal Portions of its Reply (ECF No. 90), and Nurix's Motion to Seal Portions of its Opposition to HotSpot's Motion to Strike (ECF No. 96), and seals the following:

1. HotSpot's Motion to Stay Discovery Pending a Complete § 2019.210 Disclosure, portions highlighted in yellow and blue 3:1-6, 3:11-14, 3:21-22, 4:9-13, 4:15-22, 5:18-20, 5:24-25, 6:1, 6:5-15, 6:19, 6:21-23, 6:27, 7:1-2, 7:6-8, 7:11, 7:16-21, 7:24-27, 8:3, 8:5, 8:7-10, 8:14-15, 8:18-20, 9:8, 9:12, 13:5-17, 14:8-10, 14:13-16, 15:3-4, 15:7-8, 16:24-25, 17:1-12, 17:14-23, 18:1-4;

2. Exhibits A-K to the Declaration of Robert Frederickson III in support of HotSpot's Motion to Stay, ECF Nos. 73-2–73-12;

3. Nurix's Opposition to HotSpot's Motion to Stay Discovery, portions highlighted in green and blue 2:6-8, 2:10-15, 2:19-20, 2:22-27, 3:1-2, 3:5, 3:15-17, 7:8-11, 7:14-16, 14:8-9, 17:3, 17:5-13;

4. HotSpot's Reply to its Motion to Stay Discovery, portions highlighted in yellow and blue 2:4-5, 2:9-11, 3:13-16, 3:20-25, 4:1-6, 4:24-25, 4:27-28, 5:1-3, 5:6-12, 5:16-17, 5:20-6:5, 8:3-

23, 8:25-28; and

     5. Nurix's Opposition to HotSpot's Motion to Strike, portions highlighted in green 4:22-25, 4:27-28.

The Court **GRANTS IN PART** and **DENIES IN PART** HotSpot's administrative motion to seal its Motion to Strike Portions of Nurix's Opposition (ECF No. 88). The Court seals the following:

     1. HotSpot's Motion to Strike Portions of Nurix's Opposition, portions highlighted in yellow (1:5-6, 1:13-14, 1:18-19, 1:28-2:6, 2:20-25, 3:1-6, 4:2, 4:11, 5:6-15, 5:18-19, 5:23-6:4, 6:8-11);

     2. Declaration of Robert Frederickson III in support of HotSpot's Motion to Strike, portions highlighted in yellow (1:8-2:4, 2:6-7, 2:13-14, 2:15, 3:11-17); and

     3. Exhibit 1 to the Declaration of Robert Frederickson III in support of HotSpot's Motion to Strike.

The Court does not seal HotSpot's Motion to Strike, highlighted portions 1:11, 3:14-28, nor the Declaration of Robert Frederickson III in support of HotSpot's Motion to Strike, highlighted portions 2:9-12. The Court **ORDERS** Hotspot to file in the public record redacted versions of its Motion to Strike and the Frederickson Declaration that conform to this order within seven days.

### IV.   MOTION TO STRIKE

HotSpot seeks to strike portions of Nurix's Opposition to HotSpot's Motion to Stay Discovery (ECF No. 81), and the Declaration of Karen Boyd in Support of Nurix's Opposition (ECF No. 82). ECF No. 89. HotSpot argues that these documents improperly rely on confidential mediation-related discussions by putting those discussions at issue. *Id.* at 5. Nurix responds that the information disclosed in its filings is not confidential because it pertains to discussions about discovery and not mediation. ECF No. 97.

Courts have used their inherent power to strike "inappropriate materials such as confidential mediation and settlement information that are improperly part of the public record." *See, e.g.*, *Jones v. Metro. Life Ins. Co.*, No. C-08-03971-JW (DMR), 2010 WL 4055928, at *6

1   (N.D. Cal. Oct. 15, 2010); *id.* at *14 ("[U]nder its inherent powers this Court may strike a

2   paragraph from a case management document that discloses confidential settlement negotiations....

3   [Plaintiff's] reference to settlement negotiations in [that document] would be inadmissible under

4   Federal Rules of Evidence 401, 403, and 408" and thus "should be stricken.").

5           The parties had a private mediation session on July 12, 2022 prior to commencement of

6   this litigation on July 13, 2022, as well as a private mediation session on March 28, 2023.  ECF

7   Nos. 97 at 2; 1 ¶ 62; 79.  As an initial matter, there is not consensus among the parties as to what

8   laws, rules, and contract provisions apply to resolution of this motion.  HotSpot invokes the

9   Alternative Dispute Resolution ("ADR") Local Rules, but they explicitly do not govern private

10  mediation.  *See* ADR L.R. 3-4(b) ("Private ADR proceedings, however, are not subject to the

11  provisions of ADR Local Rules including attendance, confidentiality, enforcement, and

12  immunity.").  There is a dispute between the parties as to the applicability of a confidentiality

13  agreement, and HotSpot fails to address Nurix's argument that this agreement does not govern

14  statements made on March 9, 2023.  *See* ECF No. 97 at 5, n.2.  Further, HotSpot invokes both

15  federal and California authority in its Motion to Strike, while Nurix relies solely on California law.

16          Whether under the confidentiality agreement, California law, or federal law, this Court

17  does not find the contested statements in Nurix's Opposition and the Declaration of Karen Boyd in

18  Support of Nurix's Opposition impermissibly disclose conduct or statements pertaining to the

19  mediation.  "[T]he timing, context, and content of the communication all must be considered" in

20  determining whether a party has met its burden to show a communication should be subject to

21  mediation confidentiality.  *Wimsatt v. Superior Ct.*, 152 Cal. App. 4th 137, 161 (2007).  While

22  there is some evidence that this conversation served to facilitate mediation, there is also evidence

23  that was not the only purpose and that the parties had been discussing discovery issues before any

24  direction by Judge Bongiovanni in the parties' related New Jersey litigation.  *See, e.g.*, ECF No.

25  97-2 (setting up a phone call to discuss HotSpot's document production and interrogatory

26  responses).  Nurix's statements appear tangential, at best, to the mediation discussions between the

27  parties as they largely address resolution of an ongoing discovery dispute at the center of

28  HotSpot's Motion to Stay.  The cases cited by HotSpot involve disclosures far more germane to

the mediation and, presumably, to resolution of the underlying claims. *See Jones*, 2010 WL 4055928, at *14 (applying federal law and striking portions of a filing pertaining to a case management conference because the *pro se* plaintiff disclosed post-mediation settlement negotiations because they would be inadmissible under Federal Rules of Evidence 401, 403, and 408); *Wimsatt*, 152 Cal. App. 4th at 158-61 (finding disclosure of a mediation brief and emails communications clarifying the brief to be protected). While Nurix's statement that HotSpot "stonewalled Nurix's attempts to resolve this dispute informally" prior to commencement of this action more closely relates to mediation and settlement negotiations, the Court does not consider such a broad characterization to amount to an improper disclosure of mediation conduct or communications. The Court also notes a lack of prejudice as the Court does not consider Nurix's statements relevant to resolution of the Motion to Stay.

Accordingly, HotSpot's Motion to Strike is **DENIED**.

## V. MOTION TO STAY DISCOVERY

### A. Legal Standard

"In any action alleging the misappropriation of a trade secret . . . , before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity . . . ." Cal. Civ. Proc. Code § 2019.210. The parties do not contest that § 2019.210 applies here. *See generally* ECF Nos. 73, 81. "'Reasonable particularity' mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation." *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 835 (2005). "Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational[,] . . . under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Id.* at 836. "'Reasonable particularity' should be understood in light of the purposes of § 2019.210:

'First, it promotes well-investigated claims and dissuades the filing of

> meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. [Citations.] Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. [Citations.] Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.'

*Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015) (quoting *Advanced Modular*, 132 Cal. App. 4th at 833-834).

"The degree of 'particularity' that is 'reasonable' will differ, depending on the alleged trade secrets at issue in each case." *Id.* Where the alleged trade secrets "consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Id*; *see also Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 (2009) (applying the more exacting standard where the trade secret involved "developing protein based treatments for viral infections . . . ."). "A court 'must exercise its sound discretion in determining how much disclosure is necessary to comply with section 2019.210 under the circumstances of the case.'" *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18CV00404LHKVKD, 2019 WL 176261, at *2 (N.D. Cal. Jan. 10, 2019) (quoting *Perlan*, 178 Cal. App.4th at 1349). Trade secret "identification is to be liberally construed, and reasonable doubts concerning its sufficiency are to be resolved in favor of allowing discovery to commence." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 152 (2009) (citing *Advanced Modular*, 132 Cal. App. 4th at 836-37).

**B.     Discussion**

    **1.     Reasonable Particularity**

HotSpot argues that Nurix's § 2019.210 disclosure is overly vague and fails to identify trade secrets with reasonable particularity. ECF No. 73 at 19-20. Nurix's § 2019.210 disclosure provides seven, numbered trade secret categories as well as subcategories, such as 1(a). ECF No. 73-5, Exhibit B. Specifically, HotSpot contests Nurix's § 2019.210 disclosures as to trade secrets 1(b), 2(a), 3, 4, and 5(c). ECF No. 73 at 9. Nurix argues that its disclosure is sufficiently particular because it cites to highly detailed and pertinent technical documents. ECF No. 81 at 10-

9

1      11.

2          Courts have found disclosures listing "concepts" or "categories of information" fail to meet the "reasonable particularity" standard of disclosure. *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1114 (N.D. Cal. 2016); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (noting in the summary judgment context a plaintiff may not simply "identify categories of trade secrets they intend to pursue at trial."); *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) ("A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret."). Nurix argues that its § 2019.210 disclosure provides "high-level descriptions of Nurix's trade secrets" alongside technical disclosures in the form of citations to particular documents, and that together these disclosures are reasonably particular. ECF No. 81 at 10-11. "As a general matter, identification of a trade secret may include a reference to a specific document or portion of a document, so long as the trade secret is described with reasonable particularity." *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-00404-LHK (VKD), 2019 WL 176261, at *3 (N.D. Cal. Jan. 10, 2019).

         The Court finds that the challenged trade secrets are impermissibly vague. Trade secret 1(b) includes all "[REDACTED]" of every type. Subsections (i) to (iv) go on to refer to [REDACTED]. But those four subsections are merely *included* in the claimed trade secret, which again is "[REDACTED]." However, [REDACTED] is a subject matter, not a trade secret, and trade secret 1(b) is carefully crafted to exclude nothing within that subject matter. It is not helpful to be told that "[d]ocuments reflecting Nurix's [REDACTED] include" the list provided because with no meaningful description of what the trade secret is, HotSpot doesn't know what to look for in the documents.

         The Court thinks that subsections (i), (ii) and (iii) of trade secret 1(b) could be adequate descriptions of a trade secret, provided that the cited documents meaningfully describe these items. Each of those subsections describes a type of [REDACTED] in enough detail that citations to appropriate documents should give HotSpot sufficient direction to ascertain the claimed trade secret. Subsection (iv) ("[REDACTED]"), by contrast, means nothing at all without some

description of what techniques and criteria are the claimed trade secret. In any event, as trade secret 1(b) is not limited to anything narrower than "[REDACTED]," and includes subsection (iv), which is itself vague, the Court finds trade secret 1(b) vague.

Trade secret 2(a) – "[REDACTED]" – doesn't describe anything. In plain English, this trade secret says nothing more than "solutions to a problem." And listing certain types of solutions ([REDACTED]) does not add content to the disclosure because they all follow the word "including." There is nothing necessarily wrong with saying that documents that reflect a trade secret "include" a particular list, as a trade secret identification cannot be expected to list every document that contains them. But here, Nurix has combined a non-limiting list of documents with a meaningless description of the trade secret, and that combination does not serve to identify anything.

Similarly, trade secret 3 is "[REDACTED]." The next two sentences begin with "[f]or instance" and "[a]s a particular example," which perform no limiting function This leaves the trade secret as "[REDACTED]," with no definition of what that means and no limits on what that includes. As with trade secret 2(a), telling HotSpot that documents reflecting this undefined trade secret "include" a particular list does not help to impose any metes and bounds on the trade secret. Trade secret 4 ("[REDACTED]" some examples) has the same problem.

Topic 5(c) ("[REDACTED]"), followed by a "for example" and a "[t]his includes," and then by a statement that "[d]couments demonstrating Nurix's [REDACTED] include" the following, also leaves the trade secret with no metes or bounds. And it doesn't help that the last document in the list is "[REDACTED]." The "especially at" formulation goes out of its way to imply the trade secret is on other pages too.

For all of these trade secrets, Nurix's disclosures fail to provide sufficient information to "permit the [counter-]defendant to ascertain at least the boundaries within which the secret lies." *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 44 (2014) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).

**2.   Stay of Discovery**

HotSpot argues that because Nurix's § 2019.210 disclosure is inadequate, the Court should

11

stay all discovery until Nurix provides an amended trade secret identification that complies with § 2019.210. ECF No. 73 at 2. Nurix argues that the Court should not stay all discovery, but rather stay discovery as to the trade secrets described without reasonable particularity. ECF No. 81 at 19-20. Nurix also argues that discovery should be permitted for the breach of contract and intentional interference with performance of a contract claims. *Id.* at 20-21.

Pursuant to § 2019.210 "[i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . before commencing discovery *relating* to the trade secret," the party must identify the trade secret with reasonable particularity. Cal. Civ. Proc. Code § 2019.210 (emphasis added). As the Court previously determined that Nurix's intentional interference with performance of a contract claim stands independently of its trade secret claims, the Court permits discovery as to that claim. *See* ECF No. 65 at 12-13; ECF No. 50 ¶¶ 152, 157; *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (permitting discovery for claims based on tortious interference not based on any allegations of trade secret misappropriation). Similarly, the Court permits discovery on the portions of Nurix's breach of contract claim that do not depend on trade secret misappropriation, but stays discovery on the portions that do depend on trade secret misappropriation, and stays discovery on the CUTSA and DTSA claims, which relate to Nurix's trade secrets. *See Advanced Modular*, 132 Cal. App. 4th at 834 (finding discovery may not proceed on a breach of contract claim where plaintiff alleged defendants "breached their confidentiality agreements with Sputtered Films by disclosing the trade secrets to AMS" as the contract allegation is factually dependent on the misappropriation allegation). While Nurix argues that discovery on the reasonably particular trade secrets should be permitted to move forward, Nurix does not cite to any caselaw interpreting the statute so narrowly, and Court declines to do so. Accordingly, the Court **GRANTS** stay of discovery as to Nurix's CUTSA and DTSA claims and as to part of the breach of contract claim. The Court **DENIES** stay of discovery as to Nurix's intentional interference with performance of a contract claim and as to its breach of contract claim to the extent it does not depend on trade secret misappropriation.

## VI. CONCLUSION

For the foregoing reasons, HotSpot's Motion to Stay Discovery until Nurix satisfies the § 2019.210 disclosure requirement is **GRANTED IN PART** and **DENIED IN PART**. HotSpot's administrative motion to seal its Motion to Strike Portions of Nurix's Opposition is **GRANTED IN PART** and **DENIED IN PART**. The parties' other Administrative Motions to Seal (ECF Nos. 72, 80, 90, 96) are **GRANTED**. The Court **DENIES** HotSpot's Motion to Strike. Nurix shall serve a statement identifying the trade secrets at issue within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: April 18, 2023

THOMAS S. HIXSON
United States Magistrate Judge